## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

MAZIE GREEN,

                Plaintiff,

v.                                    CIVIL ACTION NO.  5:07-cv-00369

CSX HOTELS, INC.,

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion for Summary Judgment [Docket 66], Plaintiff's Motion for Summary Judgment [Docket 67], and Plaintiff's Motion for Leave to Supplement Objections [Docket 129].[1]  Pursuant to the Standing Order entered on August 1, 2006, and filed in this case on June 7, 2007, the matter was referred to United States Magistrate Judge R. Clarke VanDervort for pretrial management and submission of Proposed Findings and a Recommendation (PF&R) pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort filed his PF&R [Docket 121] on September 5, 2008.  Plaintiff filed her Objections [Docket 122] on September 15, 2008, and Defendant filed its Objections [Docket 127] on September 18, 2008. Plaintiff's Motion for Leave [Docket 129] is **GRANTED**, and the Court will accord Plaintiff's Memorandum in Support of her Motion to Supplement Objections [Docket 130] due weight.

---

[1]  Also pending before the Court is Plaintiff's Cross Motion in Opposition to Defendant's Motion for Summary Judgment [Docket 75].  Although the document is styled as a motion, it merely contains additions and corrections to Plaintiff's Memorandum in Opposition [Docket 72]. Accordingly, the Cross Motion [Docket 75] will be **DENIED AS MOOT**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The full factual and procedural history is set forth in the PF&R.  Plaintiff was employed by Defendant CSX Hotels, Inc. d/b/a The Greenbrier from July 10, 1979, until November 8, 2004. Initially, Plaintiff began working as a file clerk until she was given a job as a waitress in the resort's main dining room and later transferred to Draper's Café, a more casual dining area also on the grounds of the resort.  Plaintiff injured her back on April 12, 2002, while working as a waitress at Draper's.  She was diagnosed with a lower back strain or sprain and consequently filed a Report of Occupational Injury with West Virginia's Workers' Compensation Division claiming temporary total disability, and was awarded benefit payments between April and July 2002.

On August 1, 2002, Defendant contacted Plaintiff regarding the possibility of her returning to work as a checker.  Plaintiff, however, refused to interview for the checker position because she claimed she had not been released for work by her physician.  On August 19, 2002, Defendant mailed a letter to the Workers' Compensation Division requesting that Plaintiff's benefit payments be suspended pending further medical testing because her physician "believed her medical condition may not be due to her work-related injury."  (Docket 73-2 at 2.)  Plaintiff was released for work on September 30, 2002, and returned to work at Draper's the following day.  However, Plaintiff continued to experience back pain at work and again ceased working on October 10, 2002.

Plaintiff resumed treatment with her physician and was released for work again on March 24, 2003.  Defendant's return-to-work policy, however, requires all employees who are absent from work for an extended period of time due to injury to pass a functional capacity evaluation (FCE) before being allowed to return to work.  The FCE was performed on June 11, 2003, by Mick Bates, a physical therapist at Body Works Rehabilitation.  Plaintiff states that during the evaluation, she

2

was "required to walk on a treadmill, walk up and down a flight of steps, and lift a variety of weights up to 30 pounds." (Pl.'s Aff., Docket 73 at 4.) Mr. Bates concluded based on the FCE that Plaintiff "demonstrate[d] functioning at a Light/Light-Medium Physical Demand Level [with restrictions]." (Docket 73-3 at 2.) Mr. Bates determined that, based on that level of functioning, Plaintiff "[did] not appear to meet the *unrestricted* [Light/Light-Medium] Physical Demand Level [required] to return to her pre-injury employment." (*Id.* (emphasis added).) Mr. Bates then recommended that Plaintiff participate in a four-week work conditioning program.

On May 6, 2003, Plaintiff initiated a complaint with the West Virginia Human Rights Commission (WVHRC) regarding The Greenbrier's return-to-work policy. (Docket 73 at 7.) There is no evidence that the complaint was acted upon by the WVHRC. On July 11, 2003, Plaintiff's attorney, Don Stacy, who represented Plaintiff in her Workers' Compensation proceedings, sent a letter to Vicky DeLeo, the Human Resources Director at The Greenbrier, representing that Plaintiff wished to return to work and was willing to do so under modified conditions. (Docket 73-5 at 33.) Defendant claims, however, that Plaintiff "was not medically authorized or able to return to work" at that time, and did not permit her to do so. (Docket 66-2 at 5.) After completing the four-week conditioning program, Plaintiff completed a second FCE on August 28, 2003. During this FCE, Plaintiff was again "required to walk on a treadmill, walk up and down a flight of stairs, and lift a variety of weights up to 30 pounds." (Docket 73 at 5.) This time, Mr. Bates observed "a decrease in [Plaintiff's] physical and functional ability," leading him to conclude that she "[did] not appear to meet the Light/Light-Medium Physical Demand Level for return to pre-injury employment." (Docket 73-3 at 9.)

On September 21, 2003, Plaintiff sent another letter to Ms. DeLeo, again requesting accommodations or modified work.  Neither party has presented evidence regarding Defendant's response to this letter, if any.  Based on the subsequent events, however, it is safe to assume that the request was either ignored or denied.  On October 3, 2003, Plaintiff initiated a second complaint with the WVHRC, alleging racial and disability discrimination.  (Docket 73 at 7.)  Again, there is no evidence in the record that the WVHRC took any action in response to this complaint. Thereafter, on January 1, 2004, Plaintiff sent a letter to her union inquiring about her employment status and complaining of alleged discrimination by The Greenbrier.  (Docket 73-5 at 27.)  There is no evidence in the record regarding the union's response.

Plaintiff remained on work-related leave until Defendant notified her by letter dated June 22, 2004, that she would be subject to termination if she did not return to work by October 13, 2004, twenty-four months after her leave began.  (Docket 66-4 at 40.)  Plaintiff was again released for work by her doctor on October 13, 2004.  Plaintiff then sent a letter to Defendant's workers' compensation administrator, Comp-Trol, complaining about Defendant's return-to-work policy and the conditions of the first two FCEs.  (Docket 73-5 at 21.)

After Plaintiff's union representative sent a letter to Defendant on October 16, 2004, requesting that Plaintiff be reinstated immediately, (Docket 73-4 at 22), Plaintiff was scheduled for another FCE on October 19 and 21, 2004, at Greenbrier Valley Physical Therapy in Lewisburg, West Virginia.  (Docket 73 at 5.)  This FCE, performed by Kevin Workman, required Plaintiff

> to crawl up and down a hallway on the floor[,] . . . go up and down a flight of stairs [] approximately 5 times as fast as [she] could[,] . . . walk forwards, backwards, and sideways on a board put on the floor that was similar to a balance beam[,] . . . kneel on [her] knees for as long as [she] could[,] . . . crouch for as long as [she] could[,] . . . squat for as long as [she] could[,] . . . lift 50 pounds[,] . . . [and] climb a ladder.

(*Id.*)  The FCE, however, was inconclusive because Mr. Workman was not provided with a "formal, objective functional job description" and because Plaintiff refused to lift or carry more than thirty pounds or perform the three-step ladder climb.  (Docket 73-3 at 20-21.)  On November 8, 2004, Defendant notified Plaintiff via letter that her employment was terminated based on her failure to adequately complete an FCE.  (Docket 73-5 at 23.)

On March 17, 2005, Plaintiff initiated a complaint with the Equal Employment Opportunity Commission (EEOC), alleging that Defendant had engaged in discrimination based on her race and disability.  (Docket 73-4 at 19-20.)  The EEOC complaint also alleged that Defendant had retaliated against Plaintiff because she had previously filed complaints with the WVHRC and lodged grievances with her union.  (*Id.*)  Plaintiff filed the instant lawsuit on June 7, 2007, alleging discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112(a).[2]  Discovery closed on April 4, 2008, and Defendant filed its Motion for Summary Judgment [Docket 66] on June 9, 2008.  Plaintiff also filed a Motion for Summary Judgment [Docket 67] on that same date.

In his PF&R, Magistrate Judge VanDervort recommends that the Court deny Plaintiff's summary judgment motion as to all claims, and grant Defendant's motion for summary judgment as to all claims except Plaintiff's claim of discrimination under the ADA.  The parties timely filed objections to the PF&R.  Specifically, Defendant objects to Magistrate Judge VanDervort's recommendation that the Court deny its summary judgment motion as to the ADA discrimination

---

[2]  Although Plaintiff's filings are well-prepared and she cites to these statutes in her Complaint, because she is acting pro se, Plaintiff's filings are construed liberally and held to a more relaxed standard than if they were prepared by an attorney.  *See Haines v. Kerner*. 404 U.S. 519, 520-21 (1972).

claim. (Docket 127 at 10.) Plaintiff objects to the recommendation that the Court deny her motion

for summary judgment on all her Title VII race discrimination claims, her harassment claim under

the ADA based on Defendant's requirement that she take three FCEs, and her spoliation claim.

(Docket 122.) The briefing is complete and the matter is now ripe for the Court's review.[3]

## II.  STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

However, the Court is not required to review, under a de novo or any other standard, the factual or

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to

which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this

Court need not conduct a de novo review when a party "makes general and conclusory objections

that do not direct the Court to a specific error in the magistrate's proposed findings and

recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Here, objections to

Magistrate Judge VanDervort's PF&R were due by September 22, 2008. Both parties timely filed

objections.

Summary judgment is proper where the pleadings, depositions, and affidavits in the record

show that there is "no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that

reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[3] This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331 because the action
arises under the laws of the United States, Title VII and the ADA.

250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984. Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Catrett*, 477 U.S. at 323. If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.*

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.  PLAINTIFF'S ADA CLAIMS

Magistrate Judge VanDervort recommends that both parties' motions be denied as to Plaintiff's ADA discrimination claim. (Docket 121 at 18.) Defendant objects to this recommendation, arguing that there is no genuine issue of material fact as to whether it regarded Plaintiff as disabled and that the magistrate judge ignored Defendant's legitimate, non-discriminatory reason for terminating Plaintiff. (Docket 127.) Plaintiff also appears to object to this

recommendation. (*Cf.* Docket 122 at 17.) Accordingly, a thorough examination of Plaintiff's ADA claim and the parties' objections is appropriate.

A.    *Applicable Law*

Under the ADA,

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The first step to prevail on a case under this section is to establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The United States Court of Appeals for the Fourth Circuit has established a four-part test that Plaintiff must meet to make out a prima facie case:

> (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

*Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *Ennis v. Nat'l Assoc. of Bus. & Educ. Radio*, 53 F.3d 55, 58 (4th Cir. 1995)). If Plaintiff establishes a prima facie case, the burden shifts to Defendant to come forward with a "legitimate, nondiscriminatory reason" for discharging her. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If Defendant makes such a showing, the burden shifts back to Plaintiff to "persuad[e] the court that a discriminatory reason more likely motivated the employer or . . . show[] that the employer's proffered explanation is unworthy of credence." *Id.*

### B.     Analysis

Magistrate Judge VanDervort found that Defendant is a covered entity for purposes of the ADA and that there is no dispute that Plaintiff was discharged; however, he also found that issues of fact exist as to whether Plaintiff is within the ADA's protected class, whether she was adequately performing the job, whether the circumstances give rise to an inference of discrimination, and whether Defendant offered a legitimate, non-discriminatory reason for her discharge.  (Docket 121 at 9-10.)  The Court will address each of these elements in turn.

#### (1)     Qualified Individual With a Disability

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Under the ADA, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

An individual may be regarded as having an impairment in one of two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).  A "major life activity" includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i). "[W]hen an employee asserts . . . that he was regarded as disabled, the analysis 'focuses on the reactions and perceptions of the [employer's] decisionmakers' who worked with the employee."

*Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008) (citing *Runnebaum v. NationsBank of Md., N. A.*, 123 F.3d 156, 172-73 (4th Cir. 1997) (abrogated on other grounds)).

The parties do not object the magistrate judge's finding that Plaintiff was not actually physically impaired.  Defendant, however, takes issue with the finding that an issue of fact exists as to whether it regarded Plaintiff as having an impairment.  In the PF&R, the magistrate judge finds that Defendant's failure to offer Plaintiff any positions following her March 24, 2003 work release creates an issue of fact as to whether Defendant regarded her as disabled at that time.  In its objections, Defendant maintains that it "had no duty to offer additional accommodations [to a 'regarded as' plaintiff, so] its decision not to do so cannot be used as evidence that [Plaintiff] was 'regarded as' disabled."  (Docket 127 at 4.)

There is no dispute between the parties that employers are under no duty to offer reasonable accommodations to "regarded as" plaintiffs.  *See, e.g.*, *Kaplan v. City of N. Las Vegas*, 323 F.3d 1226, 1231-32 (9th Cir. 2003) (adopting majority view).[4]  Accordingly, Defendant may not be held liable for failing to offer Plaintiff reasonable accommodations.  Defendant's failure to accommodate Plaintiff, however, is not at issue here; rather, the issue is Defendant's subjective perception and whether it regarded Plaintiff as disabled.  Evidence that an employer offered an employee a different position may show that the employer did not regard the employee as disabled.  *See Graham v. Interstate Brands Corp.*, No. 00 C 4989, 2002 WL 1632283 (N.D. Ill. July 23, 2002) ("[The

---

[4] Although there is no dispute between the parties, there is a circuit split.  The Fourth Circuit has not weighed in on this issue.  *See Wilson*, 513 F.3d at 388.  The majority view, however, is incorporated into the recent amendments to the ADA, which will take effect January 1, 2009.  ADA Amendments Act of 2008, Pub. L. No. 110-325, § 6, 122 Stat. 3553, 3558 (2008) (Amending 42 U.S.C. § 12201(h) to read:  "A covered entity . . . need not provide a reasonable accommodation . . . to an individual who [is merely regarded as disabled].")

employer] specifically demonstrated its perception that Plaintiff could continue to work by offering him another position.").   Thus, the fact that Defendant failed to offer Plaintiff a different position, especially after she repeatedly sought one, at the very least leaves open the possibility that a reasonable jury could find that Defendant regarded Plaintiff as disabled.

In the PF&R, the magistrate judge also noted that Plaintiff's third FCE could not be completed due to "the lack of an accurate functional job description and [Plaintiff's] refusal to complete the FCE to her maximal safe abilities."  (Docket 121 at 14 (internal quotation marks omitted).)  Employers are generally prohibited from requiring employees to submit to medical examinations unless the examination "is job-related and consistent with business necessity."  42 U.S.C. § 12112(d).  "[A] request for an [FCE] that complies with the statutory restrictions will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as [disabled] . . . ."  *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 515 (4th Cir. 2001).[5] If, on the other hand, "[an] employer's examination [is] not limited to an assessment of those potential impairments that had occasioned the examination in the first place, but instead became a 'wide-ranging assessment of mental or physical debilitation,' such evidence might be highly probative as to the nature of the employer's perception."  *Id.* (internal citation omitted).

The third FCE, it is important to note, differed greatly from the first two.  During the third FCE, Plaintiff was required to: 1) crawl up and down a hallway on the floor; 2) climb up and down a flight of stairs five times as fast as she could; 3) maneuver forwards, backwards, and sideways on

---

[5]  The distinction here is that an FCE specifically limited to those tasks required of a waitress at Draper's would be probative of Plaintiff's fitness *for that particular job*.  *See Tice*, 247 F.3d at 515. To regard an employee as having a disability, the employer must view the employee as being unfit to perform a *variety of different jobs*, i.e., impaired in the major life activity of working.  *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 811 (6th Cir. 1999).

a board that resembled a balance beam; 4) kneel on her knees; 5) squat; 6) carry fifty pounds; and 7) climb a ladder. These activities may hardly be said to be necessary to the job of waitress at Draper's. Moreover, Defendant failed to even provide the examining physical therapist with an accurate functional job description. This failure, coupled with the wide range of non-work-related activities listed above, may indicate that Defendant regarded Plaintiff as being unfit to perform *any* job at The Greenbrier. Accordingly, in light of Defendant's failure to offer Plaintiff another position and its requirement that Plaintiff submit to at least one improper FCE,[6] there exists an issue of fact as to this element.

### (2) *Qualified to Perform the Essential Functions of the Job*

The next element in Plaintiff's prima facie case is whether "at the time of h[er] discharge, [s]he was performing the job at a level that met h[er] employer's legitimate expectations." *Haulbrook*, 252 F.3d at 702. In making this determination, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Evidence that a court may consider in making this determination also includes, among other things, the amount of time an employee spends performing the function, the consequences of not performing the function, and the terms of a collective bargaining agreement. 29 C.F.R. § 1630.2(n).

---

[6] There is also a dispute between the parties regarding the amount of weight required by the initial functional job description. (*See* Docket 73 at 9.) In light of this dispute, there also may be an issue of fact regarding whether the first two FCEs, during which Plaintiff was required to lift thirty pounds, are proper under the statute.

12

As the magistrate judge pointed out, there is some dispute regarding the essential functions of Plaintiff's job. (Docket 121 at 16-17.) Moreover, as noted above and will be discussed in greater detail below, there is an issue of fact regarding whether the FCEs comported with the statutory requirement that they be job-related and necessary to Defendant's business. The propriety of those FCEs may be probative of Plaintiff's ability to perform the essential functions of her job. Finally, as the magistrate judge also noted, Plaintiff has subsequently performed the job of waitress at Western Sizzlin, which may indicate that she would be able to perform the same job at Draper's. (Docket 121 at 17.) Accordingly, there is at least an issue of fact as to this element.

### (3)    Circumstances Raising a Reasonable Inference of Discrimination

The magistrate judge found that issues of fact exist regarding this element. Although Plaintiff appears to object to this finding, she does not present any evidence or argument to support her objection. Rather, she merely states in conclusory fashion that her "discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." (Docket 122 at 17.) In light of the lack of further evidence presented by Plaintiff in her Objections, the Court agrees with the magistrate judge's finding that an issue of fact exists as to this element.

### (4)    Legitimate, Non-Discriminatory Reason for Discharge

The magistrate judge also found an issue of fact regarding Defendant's proffered explanation for discharging Plaintiff. (Docket 121 at 18.) Defendant objects to this finding, contending that it "terminated [Plaintiff] in accordance with the applicable Collective Bargaining Agreement." (Docket 127 at 8.) Defendant also states that Plaintiff has failed to provide any evidence that this explanation is pretextual.

At first blush, Defendant's proffered non-discriminatory reason appears to be legitimate: the collective bargaining agreement states that employees who do not return to work within two years of a work-related injury are subject to termination.  It is undisputed that Plaintiff did not return to work within the allotted time period.  However, Plaintiff has presented evidence sufficient for a jury to conclude that Plaintiff was prevented from returning to work based on Defendant's discrimination.  Accordingly, if a jury finds that Defendant discriminated against Plaintiff by preventing her return, Defendant's proffered explanation may be pretextual.  Therefore, a jury must decide this issue.

*(5)     Propriety of the FCEs*

Finally, Plaintiff objects to the magistrate judge's finding that Defendant is entitled to a judgment as a matter of law on this claim.  Specifically, Plaintiff posits that the scope of the FCEs was in excess of "the state law's intended purpose of determining the employee's eligibility for workers compensation benefits."  (Docket 122 at 7.)  Although this specific statement is untrue, the scope of FCEs must be "job-related and consistent with business necessity."   42 U.S.C. § 12112(d)(4)(A).   This requirement is not limited to an analysis of whether an employer discriminated against an employee in the terms, conditions, and privileges of his or her employment. There exists a separate cause of action for evaluations performed in violation of the ADA's prohibition.  *See Conroy v. N.Y. State Dep't of Correctional Servs.*, 333 F.3d 88 (2d Cir. 2003) (entertaining ADA claim under 42 U.S.C. § 12112(d)(4)(A) by plaintiff who merely alleged that he was injured by activity prohibited by this section).  Because Plaintiff is proceeding pro se, the Court will evaluate her potential claim under this section.

14

As the Court discussed above, there is at least an issue of fact regarding whether the activities required in each of Plaintiff's FCEs comported with the requirements for a waitress at Draper's. For example, there is a dispute between the parties regarding the applicable written job description, including how much weight a waitress is required to carry. (Docket 121 at 16-17.) Further, Plaintiff was required during her third FCE to perform a number of tasks that likely are not included in the job description, including crawling on the floor, climbing steps, and lifting fifty pounds. A jury must decide whether the FCEs were in accord with the essential job functions required of a waitress at Draper's.

## IV.  PLAINTIFF'S TITLE VII CLAIMS

Magistrate Judge VanDervort found as a matter of law that Plaintiff failed to establish a prima facie case of race discrimination, a case of disparate impact, or a case of retaliation. Plaintiff objects to these findings as to the discrimination and retaliation claims. There is no mention in her objections of any objection to the disparate impact claim. Accordingly, the Court will review the discrimination and retaliation claims de novo.

### A.  Racial Discrimination Claim

Plaintiff alleges that she was discriminated against in the administration of the FCEs on three bases. First, she alleges that white employees were not required to complete the same tasks she was required to complete. Second, she alleges that white employees did not have their blood pressure checked frequently during the administration of the FCEs. Finally, she alleges that several white employees received reasonable accommodations while her requests for accommodations were ignored. The Court will address these allegations in turn.

#### (1)  Applicable Law

15

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Claims under Title VII are analyzed under the same burden-shifting analysis used for ADA claims.  Plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  *McDonnell Douglas*, 411 U.S. at 802.  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to come forward with a "legitimate, nondiscriminatory reason" for discharging her.  *Burdine*, 450 U.S. at 254.  If Defendant makes such a showing, the burden shifts back to Plaintiff to show that the proffered reason is merely pretextual.  *Id.*

The Fourth Circuit follows a four-part test to establish a prima facie case of racial discrimination: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment."  *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  Plaintiff must support her prima facie case with adequate evidence; "unsubstantiated allegations and bald assertions" will not carry the day.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

(2)     *Analysis*

The magistrate judge found that Plaintiff was unable to show that similarly situated employees outside the protected class received more favorable treatment or to establish a causal connection between Defendant's actions and the allegedly discriminatory treatment.  In her Objections, Plaintiff states that she "respectfully disagrees" with that finding.  (Docket 122 at 6.)

16

In support of this objection, Plaintiff generally asserts the same factors she stated in her original motion: that her FCEs lasted considerably longer than those of white employees and that her blood pressure was taken routinely during the administration of the FCEs.

As the magistrate judge correctly points out, Plaintiff has presented no evidence that Defendant requested that the independent physical therapists administering the FCEs treat Plaintiff differently based on her race.   Moreover, Plaintiff has presented no evidence that the persons administering the FCEs took her blood pressure more often *based on her race*.  As the magistrate judge noted, it is reasonable to believe that the therapists administering the FCEs were concerned about the health of a person with high blood pressure who was asked to perform a variety of potentially strenuous physical tasks.   Even if the repeated blood pressure checks were racially motivated, there is no evidence to suggest that the checks in any way influenced the FCEs or Defendant's subsequent employment decisions.   Without evidence that any of these allegedly discriminatory actions were performed at the direction of or on behalf of Defendant, Plaintiff cannot make out a prima facie case of racial discrimination.   Based on the evidence in the record, there is no issue of fact regarding this issue, and Defendant is entitled to a judgment as a matter of law on this claim.

### B.      Retaliation

Plaintiff alleges that the FCEs and her subsequent termination were undertaken by Defendant in retaliation for her involvement in a number of allegedly protected activities, including:  1) filing a complaint with the EEOC; 2) filing a complaint with the WVHRC; 3) filing union grievances; 4) submitting work releases to her supervisors at The Greenbrier; and 5) writing a letter to the former Governor.

17

*(1)     Applicable Law*

Under Title VII, it is unlawful for an employer to

> discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).   The Fourth Circuit requires a plaintiff alleging a claim under this section to establish a prima facie case using a three-part test under which a plaintiff must prove: "(1) that he engaged in a protected activity; (2) [the employer] acted adversely against him; and (3) the protected activity was causally connected to the adverse action." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).   An adverse action, as required by *Holland*, is not limited in scope to employment-related actions.   Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).   In other words, the challenged action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations and quotation marks omitted).

Protected activities for purposes of Title VII actions include filing a complaint with the EEOC, *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004), filing a complaint with the WVHRC, *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995), and filing a union grievance directed at Title VII violations, *cf. Satchel v. Sch. Bd. of Hillsborough County*, 351 F. App'x 626, 628 (11th Cir. 2007) (unpublished) ("The activities cited in [the employee's] complaint, including filing a union grievance, . . . do not constitute the type of protected activity contemplated by Title VII because [the employee] failed to allege . . . or otherwise indicate that the [employer] was engaged in unlawful employment practices.").

18

A significant lapse of time between the protected activity and the adverse employment action may "weaken significantly the inference of causation." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). However, a plaintiff may still establish a prima facie case despite a significant lapse of time where the other evidence of retaliation is sufficient to demonstrate causation or where circumstances dictate that the adverse action occurred at a "natural decision point." *Id.*

        *(2)     Analysis*

Magistrate Judge VanDervort found that providing written return-to-work releases, communicating with a union, and writing a letter to a Governor are not protected activities. He then found that, given the significant gap in time between Plaintiff's protected activities of filing union grievances and filing complaints with the EEOC and WVHRC, Plaintiff failed to establish a causal link between those activities and any adverse employment action. Plaintiff objects to the finding that she failed to establish a causal link between her protected activities and both the FCE requirements and her firing. (Docket 122 at 9.)

Initially, the Court notes that requiring an injured employee to pass an FCE before returning to work does not constitute the kind of adverse action contemplated by Title VII. Although *Burlington* requires only that an employer's action potentially "dissuade[] a reasonable worker from making or supporting a charge of discrimination," 548 U.S. at 68, it is difficult to envision any scenario where an employer would require an FCE solely because an employee had engaged in a protected action. Rather, FCEs are typically reserved for determining whether an injured employee is capable of returning to his or her prior position. Further, Plaintiff's argument on this point is undermined by the fact that Defendant required other employees to complete FCEs despite a lack of evidence to indicate that those employees also engaged in protected activities. (Docket 60 at 1.)

Nonetheless, the Court disagrees with the finding of the magistrate judge as to the causal link between Plaintiff's protected activities and her termination. Although it is true that the passage of time tends to negate the inference of causation, it is not the only factor. *See King*, 328 F.3d at 151. Here, Plaintiff filed a number of complaints and grievances over a lengthy period of time. Specifically, she filed complaints with the WVHRC on May 6, 2003, and October 3, 2003. She also complained to both her union and Comp-Trol at various points between January 1, 2004, and October 16, 2004, within two weeks of her termination.[7] As such, there is at least an issue of fact as to the amount of time that passed between her protected activity and her termination.

Further, based on the evidence in the record, a jury may conclude that Defendant terminated Plaintiff at a natural decision point, namely, the end of the two-year period during which she was unable to return to work. Plaintiff made complaints to the WVHRC and to her union over a long period of time during which she was attempting to return to her work at The Greenbrier. During this time, she repeatedly sought alternative work that would not require her to lift heavy weight or stand for long periods of time, yet she was repeatedly rejected or ignored. Eventually, she was asked to complete a third FCE that included a number of tasks that exceeded those required for a waitress at Draper's. At the end of this time period, Defendant terminated Plaintiff in accordance with the two-year time limit set forth in the Collective Bargaining Agreement. Based on the foregoing, Plaintiff has produced sufficient evidence of causation to withstand summary judgment on this issue.

---

[7] The record is not entirely clear regarding the specific nature of each of these complaints, however, Plaintiff states in her affidavit that she filed a grievance as late as October 2004 when Defendant demanded she perform a third FCE. (Docket 73 at 7.)

## V.  PLAINTIFF'S SPOLIATION CLAIMS

Plaintiff alleges that Defendant intentionally engaged in the destruction of two pieces of evidence: the Draper's Café Redbook records for the period June 26, 1998, to August 5, 1998, and Plaintiff's WVHRC complaints.

### A.       Applicable Law

Parties have a duty to preserve evidence during litigation and when a party is actually aware of or reasonably should anticipate litigation. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001).  If a party does not control the evidence, "he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Id.*  In West Virginia, a party may bring a separate cause of action for spoliation if it can meet a six-part test:

> (1) the existence of a pending or potential civil action; (2) the alleged spoliator had actual knowledge of the pending or potential civil action; (3) a duty to preserve evidence arising from a contract, agreement, statute, administrative rule, voluntary assumption of duty, or other special circumstances; (4) spoliation of the evidence; (5) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; and (6) damages.

Syl. pt. 8, *Hannah v. Heeter*, 584 S.E.2d 560 (W. Va. 2003).  "Once the first five elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation." *Id.*

### B.       Analysis

Magistrate Judge VanDervort found that Plaintiff did not present sufficient evidence to withstand summary judgment as to either piece of evidence.  Regarding the Redbook, the magistrate judge found that the relevant portions were not destroyed in anticipation of litigation.  Regarding

the WVHRC complaints, the magistrate judge found that Plaintiff never proved that they were actually in existence. Plaintiff objects to both findings.

(1)    *The Redbook*

Plaintiff claims that she has met each of the elements required to make out a case for spoliation because "Defendant had knowledge of a potential civil action when Vicky DeLeo sent the Plaintiffs [sic] request for accommodation [on September 21, 2003]." (Docket 122 at 18.) Defendant represented during discovery, and the magistrate judge found in his Order Denying Plaintiff's Motion to Compel [Docket 96], that those documents were purged in the usual course of business and not in anticipation of litigation. Although Defendant's representation is not in the form of an affidavit or other sworn testimony, its explanation is certainly reasonable. It is likely that Defendant purges its records more often than once every five years. Thus, a request for accommodation submitted in September 2003 would likely not be in time for Defendant to preserve records from July 1998.

Moreover, Plaintiff's simple act of requesting accommodations is not likely to put Defendant on notice of potential litigation. As a business with more than 1,500 employees, Defendant likely receives several such requests every year that do not lead to litigation. Furthermore, Plaintiff's request for accommodations related to her ADA claim, while she alleges that the Redbook entries would be probative of her Title VII claim. Defendant simply could not have contemplated the initiation of a race discrimination case based on a request for accommodations under the ADA. Accordingly, Plaintiff can not make out a case for spoliation, and Defendant is entitled to a judgment as a matter of law on this claim.

22

*(2)     WVHRC Complaints*

Plaintiff contends that she has met the elements necessary to present her spoliation claim to a jury regarding the WVHRC complaints.  In her Objections, she states in a conclusory manner that each element has been met.  Specifically, she states that "[Defendant's] Labor Relations Manager had knowledge of the complaints."  (Docket 122 at 18.)  Defendant's knowledge of the complaints is inapposite to this claim.  In fact, the alleged spoliator, the WVHRC, is not even a party to the instant proceeding.  If Plaintiff was to prevail on this claim, she would have to allege, and prove, that the WVHRC knew of the impending litigation.  She has made no such allegation, so her spoliation claim as to the WVHRC complaints must fail as a matter of law.

Even if the WVHRC was a party to this proceeding, Plaintiff would still have to show that but for the spoliation, she would have prevailed in the instant action.  At this point, it is impossible to make this showing because Plaintiff's retaliation claim is still ongoing.  Thus, she may still prevail on the claim despite not having the actual WVHRC complaints in hand.  If, as Plaintiff alleges, Defendant has acknowledged the existence of the complaints, the contents of those complaints may become irrelevant at trial.  Further, Plaintiff may be able to prevail on her retaliation claim based solely on her union grievances, which would again render the complaints irrelevant.  Accordingly, Plaintiff has not alleged sufficient evidence to prevail on a claim of spoliation against the WVHRC at this time.

## VI.  CONCLUSION

For the reasons stated above, Defendant's Objections [Docket 127] are **OVERRULED**; and Plaintiff's Objections [Docket 122] are **SUSTAINED** as to her ADA claim as it relates to the FCEs and as to her Title VII Retaliation claim and **OVERRULED** as to her other claims.  The Court

**ADOPTS** those portions of the PF&R [Docket 121] that are consistent with this Memorandum Opinion and Order.  Accordingly, Plaintiff's Motion for Summary Judgment [Docket 67] is **DENIED** and Defendant's Motion for Summary Judgment [Docket 66] is **DENIED** as to Plaintiff's ADA claims and Plaintiff's Title VII Retaliation claim and **GRANTED** as to Plaintiff's Title VII Race Discrimination and Disparate Impact claims and Plaintiff's Spoliation claim.  Also, Plaintiff's Cross Motion in Opposition to Defendant's Motion for Summary Judgment [Docket 75] is **DENIED AS MOOT**.  A separate Partial Judgment Order will enter this day implementing the rulings contained herein.

      **IT IS SO ORDERED.**

      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 15, 2009

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE